Good morning, and may it please the Court and Counsel. Kendra Matthews with Ransom Blackman on behalf of appellant Kritzia Arpel. Ms. Arpel pled guilty to one count of mail fraud and one count of bankruptcy fraud in a scheme related to a fraudulent foreclosure delay operation that took place. And she raised six assignments of error in her brief on appeal relating to her sentencing. Aside from answering the questions of the Court, I'm going to focus my discussion with the Court on the first assignment of error, which relates to how the district court calculated the loss in this case. The district court, perhaps to take a step back, to understand how the loss was calculated, must first understand the basic premise of the scheme. And the basic premise was this. People had received foreclosure notices and then gotten to the point where the foreclosure was about to take place and received some form of communication from Ms. Arpel and Mr. Alcantara's company saying that the foreclosure could be canceled, put off, and that their company would then contact the mortgage company and negotiate so that the mortgage foreclosure would not happen. Counsel, I think we are actually all familiar with the facts. My concern with your position on Issue 1 is that the cases on which you rely are cases in which a legitimate benefit was conferred. Someone received the services of a doctor or a lawyer, and also they were defrauded in some other way. In this case, the district court concluded that there was no legitimate service and no benefit. Why isn't that? And therefore, that everything that was collected should be calculated. What's wrong with that? Well, I think, Your Honor, there was a very real benefit, and the benefit was the opportunity to stay in their home for a price that was significantly lower than what they would have paid in mortgage for that home, but more importantly, lower than the fair market value of renting a property of that value. Even that amount was added to the amount they eventually owed the lender. Not necessarily, Your Honor. That's one of the structural difficulties of how the record developed, and it was developed in a logical manner, but what the judge did was first decide how he was going to calculate loss, and then once he determined that, it determined what was placed in the record. So it's not clear from the record how the mortgage payments were added on. Very often when people are told that their home is going to be foreclosed upon, the money sought from the mortgage company is, if you owe $160,000 on your mortgage, they say, we want $160,000 or we're going to foreclose. They're not seeking a, okay, you can pay us the additional $3,000 you owe or we're just going to ask. They don't stop accruing interest, do they? They don't. The other lender that does stop accruing interest? No, and that, Your Honor, I would agree. There are costs associated with it, and that may be something that would be considered in the loss calculation, either as a cost to the owner victim or to the lender, but it would be the interest accrued. Wasn't that a loss to somebody? That is a loss to somebody that should be calculated. The scheme works by filing or purporting to file either a bankruptcy petition or a filing within an existing bankruptcy so that the automatic stay applies and the whole foreclosure process is deferred for some period of time. But if no payments are made to the lender during that time, interest will continue to accrue. The homeowner isn't getting the benefit of payments that are being made to your client and her partner. As far as the lender is concerned, nothing is coming in, so interest accrues, other costs accrue, the total debt gets larger. It may be in some circumstances that doesn't have a negative impact on the homeowner because it may be an anti-deficiency state or for whatever reason they can't collect. But in that case, the lender takes the loss. Somebody is going to take a loss for each payment that doesn't get made. I do agree that there is a loss, but I would disagree with the Court's conclusion that it's a one-to-one exchange, that it is simply the amount of the benefit that the owner victim received by staying in the home is the amount of loss that the lender would accrue. Well, actually, the lender would have much worse, much higher, because your client is being paid 50 percent of the monthly payments, but the lender would get 100 percent of the monthly payment and would in fact, so it's in fact suffering double the loss. Assuming 50 percent is paid to your client, the lender is hurting twice as bad, or the unpaid amounts are twice as big as that. Well, I don't think that is correct, Your Honor, because it's not looking at the situation realistically. And I think perhaps turning to this Court's decision in Harper and the analysis that the Court used there where they talked about a scheme in which it was an equity skimming scheme and the people who fell for the scheme were in a position where they had little or no equity in their home and they were facing foreclosure. And the defendant in that case persuaded them, hey, listen, you don't have to deal with any of the loss concerns. It's not going to go on your record. Just let me take it over. And people said, okay, here. And that was the benefit they were hoping to obtain. And in fact, the defendant simply rented out the property until the mortgage company was able to take over. And looking at that case, the Court said, realistically, we have to consider the financial situation. The mortgage company wasn't getting paid. That hasn't really changed. Ultimately, didn't we hold that the amount of the loss was the amount that was paid over to the defendant by the victims? And isn't that precisely what the district court did here? It's slightly different because there are actually three characters in the Harper case. In Harper, you have the owner victims and the lenders, and then you have renters, people who got to use the property. They got that benefit of using the property. The owner victims who were not paying their mortgage and were causing a loss to the lender, and that's how they got in their financial position, the Court said the loss of $160,000 in rent collected was a loss of the owner victims because they could have either stayed in that property and not made accommodations for themselves or rented it out until foreclosure and collected $160,000. In this case, it's substituted down to two. In Harper, the renter victims, the people who got the benefit of having a roof over their head, did not suffer a loss. And although the Court made accommodations for if they could come forward with some other basis, but they did, the Court recognized the benefit of having a roof over their head. And in that case, as in this case, it is in one sense permeated with fraud in the sense that the key for the making money was a fraudulent act. But they still found that there was a benefit to the renter victims. They got to stay in the home. Are we only concerned with the benefit to the homeowner as compared to a loss? Because obviously the loss to the lender is probably double that of the benefit to the homeowner, even assuming what you say, that able to stay there and so forth at rent-free. But there certainly was a loss to the lender. And I'm not sure I understand how the loss to the lender would be perhaps double, but ---- Well, it's triggered by, and it's my assumption that injected it. So I understand that payments of 50 percent or more, but at least 50 percent of the regular monthly payment were made to your client. I project from that, okay, assume 50 percent is paid, that means the lender is not being paid two times the amount that your client is taking in. So he's actually, the lender is actually losing twice as much as the amount being calculated by the district court for the fraud, because that calculation was based on the amount paid to your client. Okay. I injected that. And I think ---- Follow that. I followed that a little bit more. I was doubling the mortgage, I think, in my mind. No, it's certainly not doubling the mortgage. Right. But we have a situation in which the 50 percent that's being paid is being skimmed off. So the lender is getting nothing. The lender was getting nothing. And this is the difficulty, and what the Court is being asked is to determine the proper structure for calculating loss. Because now we're speculating as to what the lender's loss is. In many instances, the lender stops accepting payment once the lender makes the decision to foreclose. And there ---- So that doesn't mean the lender isn't taking a loss. The lender is doing that so as not to be a stop or bar the manufacturer from going forward with foreclosure, not to being mandated to reinstate. That doesn't mean the lender is going to stop accruing or claim that it doesn't owe any more money. And that may be, but the lender has already owed a certain amount of money, and they have called for the entire payment of the loan. And so ---- And the interest continues to accrue. And the interest continues to accrue.  the count court is in a deficiency or an anti-deficiency court. Why does that matter? Someone's going to lose. Somebody's not getting the money that your client is getting. That is correct. But there is also a benefit that is being conferred on the owner victims, and they are getting to stay in that property as opposed to not staying in that property, in which case the loss still would accrue. There would still be a deficiency judgment of a certain amount, and the owner victims would have to be paying for housing in another location. It is far more consistent with the court's decision in Harper, in which case the court recognized the benefit of having a roof over your head, than in contrast with the other cases cited by the district court in which there are telemarketing schemes in which a refund, for instance, is not considered. A benefit. Let's just assume that we have a loss to the lender for this four months or so, that they're not getting the interest that they should be getting, but this being a benefit conferred on somebody else, does that mean the total loss is diminished to the lender? No. So is a benefit to someone else have anything to do with the loss that's being suffered by the lender? It doesn't have to do in terms of restitution, although I don't think they may be eligible for restitution under the statute. But at any rate, it wouldn't have to do with restitution. But I do think it's relevant when the question is, what is the economic harm caused by the defendant's conduct? I do think there needs to be a weighing of those different costs. But the economic harm to the lender is apparent, is it not? Well, it may be apparent, but the level and scope of it is not. And it is something that is measurable. And why is that? I still don't understand, and maybe my thickness here, but the money that went to your clients did not go to the lenders at all, correct?  Zero dollars. So why isn't all of what went to your client a loss to the lenders who didn't get it? Well, the money would not have necessarily gone to the lender. That is the fallacy created by the fact, for whatever reason, perhaps to pursue their ability to foreclose, that they had stopped collecting money from the owner renter or owner victim, excuse me. So the money that is being collected is not – was not money that would have gone to the mortgage company. At least that is not an obvious point. Well, that's the understanding of the homeowners, is that it was going to go to them. That is certainly the case that the very nature of the fraud was that they were conveying something to the homeowners that they did not have the ability to convey. Similar – Something off from the lender. What was given to them to pass through to the lender? That's my problem with your argument. I understand the court's problem, but one of – there were three promises made to the owner victims. One, we'll stop your foreclosure. Two, we'll negotiate with your lender. And three, we'll get the payments owed, add it on to the end. It was not simply a side benefit that the foreclosure was stopped. They did it through improper means, but they did go through a procedure to stop the profit. And there were victims, alleged victims, who were happy with that. That is what they were looking for. Their home was going to be foreclosed in in two days. They got an additional three months. Should structurally the loss have been figured out to say, okay, there still was a loss, it was a loss to the lender, let's come up with at least a method that would account realistically for the harm, as opposed to just taking this amount that they received without considering the loss. If there is a loss to A, a certain amount, and a benefit to B, do we not take into consideration the loss to A? I think we do. I think they need to be balanced, Your Honor. I don't know. The total amount. The total amount that A lost, isn't that the loss we're concerned with? Not a benefit to somebody else. B. I think, Your Honor, that if there is both here, the loss is the loss to the owner victims is what the Court calculated. It didn't calculate the loss to the mortgage company. And therefore, when we're looking at what it considered, it considered the loss to the owner victim, and we argued that it should be offset by the benefit the owner victim received. And the Court said, no, no, there's just a one-to-one exchange with this lender, so we don't have to consider that structural argument. Your argument is quite different, but I would submit it would come up with a very number, which is what could the mortgage company theoretically have obtained had our client not interrupted the process. Thank you, Counsel. Are you having a seat at this time? I did. Mr. Robinson. Thank you, Your Honor. May it please the Court, Kent Robinson, appearing for the United States. The fallacy of defendant's argument before this Court is the assertion that the defendant's actions created anything of value or benefit to anyone. They simply did not. What the defendant did in this case was insert herself into the contractual relationship between homeowners and mortgage holders. And as a result of fraudulently inserting herself into that relationship, siphoned off in excess of $1.6 million. Why wasn't it a benefit to the homeowner? Got to stay there for four months. They otherwise would not have. I understand. First, it's not a benefit because the defendant is not entitled to any of this money. It is an ill-gotten gain by the defendant. Second, it is not a benefit to the defendant for two reasons. Number one, any defendant who had equity in their home. Any homeowner? Excuse me? I'm sorry. Thank you, Your Honor. Any victim homeowner who had equity in their home would have lost equity for the total amounts not paid to the mortgage companies. That is actually a fact conceded in defendant's brief. Well, they would have done that, but as a matter of fact, they got to stay there for a 50 percent payment for four months that they otherwise would not have. Oh, they actually paid more, Your Honor, because the total unpaid mortgage payments were added to the mortgage, thereby reducing their equity, plus the interest actually would be added. Well, I think what the record said was that the unmade payments were added on to the mortgage. That's the level of detail we went to. That's what's conceded in the defendant's brief. Does that make sense? That the principal payment would be added? The mortgage payment is principal. It wouldn't be added, but it would be you wouldn't have a payment that reduces the balance. Correct. Your principal balance would stay the same and interest as it accrued would mount. Correct. And the equity would be even. So the total debt would mount. That's correct. It would get larger over time. That's correct. So perhaps the injury to the equity in the property is something less than 100 percent of the amount that should have been paid to the mortgage holders. But certainly there is an impact on whatever equity there may have been in the property. And secondly, then the homeowners were, in addition, paying 50 percent directly to the defendants. So I don't see that they got any benefit at all. In fact, suppose there was no equity. In my own experience, having none to do with this geographic territory, but I have been involved with foreclosures in Hawaii and in California, and there aren't that many situations where the homeowner has any appreciable equity that you actually get to the point of foreclosure sale and bankruptcy and whatnot. More often, there's not. There's a negative equity or essentially no equity. And in that case, could it be argued, indeed the defendant has argued, that from the unique perspective of the homeowner, maybe I owe a lot of money, I'm going to owe more, but then they're going to collect it out of me anyway, either because there's an anti-deficiency statute here or I'm just judgment-proof and they're not going to get it. And I get to live here another three or four months, and that's all that I really want to do. I stave off that day when I'm evicted and thrown out into the street. And for me, it was cheap. It's half my mortgage payment. Now, does that person get a benefit? To the extent that homeowner does get a benefit, it is a loss to the mortgage company. Arguably, you could say that a homeowner in those circumstances is getting to stay in a – a homeowner who has no equity in the property is getting to stay in the house for an extended period of time for lower payments. But the payments are going to the defendant, not to the rightful owner of those payments, the mortgage company. So whatever benefit there may be to the homeowners is actually a loss to the mortgage company. Now, how about the suggestion that the mortgage company wouldn't have accepted those payments anyway? I'm not sure that I share that as a factual assumption, but it's been argued that the mortgage company wouldn't have taken the payments, so it's not really going to lose anything as against what would have happened otherwise. Well, that's a new factual assertion to me, Your Honor. I'm not sure that that was developed in the record in this case. I can say I am experienced enough to know there are circumstances where lenders are cautious about taking payments so as not to reinstate. And yet I don't know of any situation where they can actually turn the payment down and also claim a deficiency for the unpaid amount, and they can't have it both ways as well. So I question the factual premise. But if it were true that the lender was going to turn the payment down, couldn't in that case it be said that there's nobody going to lose out any worse than they were going to lose out otherwise? Well, there's no evidence of that in the record. If there were evidence in the record, I would still go back to two other points. Number one is the defendant's gain from the fraud scheme is an appropriate measure of loss under the sentencing guidelines. And here the defendant's gain is the $1.6 million. It's money that the defendant was not entitled to. It's money that the defendant obtained by fraud. And none of the cases that the defense cites that provide for some discounts for value created discount defendant's gain. Those discounts are only in the cases like Harper where the concern was taking an asset value, taking the total asset value undiscounted by any other factors. In fact, as Judge Graber mentioned earlier, when in Harper, the court made it clear that it thought it was appropriate to hold the defendant accountable for his gain, which was the monies paid to him on the properties which he had no legitimate entitlement to. Even those cases that talk about providing some discount for benefits obtained do so only when those benefits are created through non-fraudulent activity. Thus, for example, in Barnes and Rutgard you had people performing medical services where there was no showing that some of those services were fraudulent. Here, however, that is not the case. There are no benefits created here by anything which is not fraudulent activity. And that was part of the district court's conclusion. Is the sentencing provision based upon the gain to the person charged or is it the loss to the victim? What does it provide? Either one. The — Or loss?  Gain or loss? It can be either, Your Honor. I think it can be gain to the defendant. It can be actual losses to the victims. And then there can also be other calculations where it's difficult to discern one of those two figures. The term in the guidelines is loss. It's called loss calculation. But the guidelines explicitly state that taking into account the gain by the defendant is an appropriate means of calculating loss. That's in the — If I understand your position, it is where the so-called service or scheme is 100 percent fraudulent or 100 percent illegal, then 100 percent of what's collected by the defendant is by definition a loss to the person who handed it over. That's distinct from the case where they went to the doctor and got something for it. That's correct. I think that actually the cases that involve defendant's gains, none of them involve any kind of a discount for benefit achieved. The cases that look at the benefits achieved either involve cases where some of the defendant's conduct was not fraudulent, such as the doctor's, or involve a case like Harper, where aside from the gain to the defendant, there was also an attempt to calculate loss based on the value of assets, and those assets were not sufficiently discounted. So I think that — I think, frankly, that the gain to the defendant period is an adequate calculation of loss and that you don't get to questions of benefits. But even where you do get to questions of benefits, where the benefit is obtained as a part of the fraud or in furtherance of the fraud, then clearly it shouldn't count. Unless the Court has other questions on that or other matters of the brief, I'm happy to submit. I think not. Thank you. Thank you, Your Honor. You have exceeded your time, so there's not enough time for rebuttal. I do have one question. Do you? Well, please, come on up. What is your response to the fact that we should be not merely concerned with the loss if we're completing it and benefit and so forth, but we should consider the gain to the defendant here? Well, I guess my response, Your Honor, would be simply that the Court has said that you should look to the economic value that is lost in circumstances where there is a benefit conferred. That obviously has a premise that the Court will either accept or reject that there was a benefit conferred in this case. But in cases in which, you know, fraudulent grapes were conveyed, the Court – that was a fraudulent act. It caused a loss. They did say – Well, I'm not sure what – if you're dealing with my question about why can't it be measured just solely by the amount of the gain. I'm sorry that I wasn't clear. I think the reason that it – there is that alternative in the guidelines. And I think what the Court has said is that that is not an appropriate gauge to simply use the gain when there is a benefit conferred. In other words, that circumstance is what changes how the Court can look at that option. We appreciate the arguments of both parties. That was very helpful. The case just argued is submitted. And we'll turn to the last case on the morning docket, which is Turay v. Sealing. I don't know if I pronounced that correctly.
judges: Hug, Graber, Clifton